# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**ANNETTE CURRY**                                    **CIVIL ACTION**

**VERSUS**                                           **NO. 14-1908**

**LOU RIPPNER, INC.**                                **SECTION: "G"(4)**

## ORDER

Before the Court is Defendant Lou Rippner, Inc. ("Lou Rippner") "Motion for Attorneys' Fees."[1] Local Rule 7.5 of the Eastern District of Louisiana requires that memoranda in opposition to a motion be filed eight days prior to the date set for hearing on the motion. No opposition to the pending motion, which was set for hearing on June 10, 2015, was submitted, timely or otherwise. Accordingly, this motion is deemed unopposed. District courts may grant an unopposed motion as long as the motion has merit.[2] Having considered the motion, the memorandum in support, the record and the applicable law, the Court herein grants the motion.

## I. Background

Plaintiff Annette Curry ("Curry") filed a complaint in this Court on August 20, 2014, alleging claims of sexual harassment and race discrimination against Defendant, her former employer.[3] In her complaint, Curry alleged that on several occasions, a coworker made unwanted and sexually suggestive remarks toward her.[4] Curry alleged that she reported these remarks to

---

[1] Rec. Doc. 17.

[2] *See Braly v. Trail*, 254 F.3d 1082 (5th Cir. 2001).

[3] Rec. Doc. 1.

[4] *Id.* at ¶ 4.

management, but no action was taken and no investigation was conducted.[5] According to the complaint, on July 30, 2012, the same coworker "ran his fingers through [her] hair while at work on the sales floor. Petitioner asked him to stop, but he attempted this action again."[6] Curry alleged that she again complained to management, but that no action was taken against the co-worker.[7] According to the complaint, "the employer advised Curry that 'we can't have you people doing these things in our store,' and subsequently terminated Curry's employment."[8] Curry alleged that "the actions of defendant" constituted sexual harassment and racial discrimination.[9]

On November 19, 2014, Defendant filed a motion to dismiss for failure to state a claim,[10] which Curry opposed.[11] On May 8, 2015, the Court granted Defendant's motion and dismissed Curry's Title VII claims against it.[12]

Defendant filed the instant motion seeking attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d)(2) and Local Rule 54.2 on May 22, 2015.[13] Plaintiff did not file an opposition.

## II. Defendant's Arguments in Support of Its Motion for Attorneys' Fees

In support of its motion, Defendant argues that 42 U.S.C. § 1988 allows a district court to

---

[5] *Id.* at ¶ 5.

[6] *Id.* at ¶ 6.

[7] *Id.* at ¶ 7.

[8] *Id.* at ¶ 8.

[9] *Id.* at ¶ 9.

[10] Rec. Doc. 4.

[11] Rec. Doc. 5.

[12] Rec. Doc. 13.

[13] Rec. Doc. 17.

award a prevailing party reasonable attorneys' fees upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.[14] Defendant argues that in *Christianburg Garment Co. v. Equal Employment Opportunity Commission*, the U.S. Supreme Court noted that the rationale for awarding attorneys' fees to a prevailing defendant under Title VII stemmed from Congress's desire to deter the bringing of lawsuits that were frivolous, unjustified, or without foundation.[15] Here, Defendant argues that several factors weigh in favor of granting attorneys' fees, namely: (1) Plaintiff did not seriously pursue her action; (2) this Court held that Plaintiff could not establish a prima facie case of harassment or discrimination under Title VII; and (3) although this case did not result in a full trial, the Court expended judicial resources—and Defendant expended monetary resources—to resolve the motion to dismiss.[16]

First, Defendant argues that Plaintiff did not seriously pursue her action, as evidenced by the fact that the "scant Complaint contained a few scarce allegations;" Plaintiff filed an untimely opposition to Defendant's motion to dismiss; said opposition was just one-and-a-half pages in length and did not contain "a single citation to any law or case to support her argument;" the opposition failed to controvert the issues raised in the motion to dismiss; Plaintiff failed to respond to any of Defendant's discovery requests, which required it to bring a motion to compel discovery; and Plaintiff never propounded any discovery or took any actions to prosecute her claim.[17] Defendant

---

[14] Rec. Doc. 17-1 at p. 2 (citing *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)).

[15] *Id.* (citing *Christianburg*, 434 U.S. at 420).

[16] *Id.* at pp. 2–3.

[17] *Id.* at p. 3.

argues that despite Plaintiff's failure to prosecute her claim, it had to expend resources to defend itself.[18]

      Furthermore, Defendant contends, Curry failed to establish a prima facie case under Title VII, as set forth by the Court in its Order dismissing her claims.[19] Defendant argues that Curry's claims of sexual harassment and racial discrimination—based on an incident in which "Plaintiff (an African-American) violently swung her fist at co-worker (an African-American) who engaged Plaintiff in innocent horseplay while at work"—were groundless and lacked foundation.[20] Defendant argues that, as the Court noted, Plaintiff did not allege any facts showing she was treated differently from any other employee, did not allege any facts regarding the content or frequency of the allegedly offensive remarks made against her, failed to identify the allegedly harassing coworker, and cited no legal authority for her argument that a single instance of touching her hair could constitute sexual harassment.[21] Furthermore, Defendant notes, the Court stated that Plaintiff had not provided any reason to believe she could remedy the deficiencies in her complaint by amendment, and despite a "lengthy and exhaustive investigation by the EEOC," the agency also dismissed her charge.[22]

      Finally, Defendant argues that the requested attorneys' fees of $6,808 are reasonable under the "lodestar" method, by which the reasonable number of hours expended on litigation is multiplied

---

[18] *Id.*

[19] *Id.* at p. 4.

[20] *Id.*

[21] *Id.*

[22] *Id.* at p. 5.

by a reasonable hourly rate.[23] Defendant contends that, from August 20, 2013 through April 30, 2015, its attorneys expended 33.5 hours litigating the case, excluding time spent addressing the charges at the administrative agency level.[24]

Furthermore, Defendant contends, the requested attorneys' fees are reasonable in light of the twelve "*Johnson* factors" utilized by the Fifth Circuit to decrease or enhance the amount of the lodestar.[25] Defendant notes that it is requesting only the actual amount billed over the course of litigation and that it obtained a favorable judgment.[26] Defendant asserts that when an attorney's requested rate is his customary billing rate and within the range of prevailing market rates, a court should consider the rate prima facie reasonable if not contested.[27]

Defendant contends that its representation was led by Angella Myers ("Myers") and Mark Carver ("Carver"). According to Defendant, Myers is the founding partner of the Myers Law Group, LLP, focuses her practice on labor and employment law, has practiced for more than 15 years, and a reasonable regular hourly rate for her to defend a Title VII case is $300 per hour.[28] Here,

---

[23] *Id.* (citing *Strong v. BellSouth Telecomms.,* 137 F.3d 844, 851 (5th Cir. 1998)).

[24] *Id.* at pp. 5–6.

[25] *Id.* at p. 6. The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

[26] Rec. Doc. 17-1 at p. 7.

[27] *Id.* (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995)).

[28] *Id.* at pp. 7–8.

5

Defendant avers, she charged only $210 per hour.[29] According to Defendant, Carver is a senior attorney with the Myers Law Group, has practiced law for more than 21 years, is an acclaimed attorney, and regularly charges $190 per hour.[30] Defendant contends that both rates are "well within range of prevailing market rates," and in fact lower than rates that have been approved in the Eastern District of Louisiana.[31]

### III. Law and Analysis

A.    *Legal Standard for Awarding Attorneys' Fees*

"It is the general rule in the United States that in the absence of legislation providing otherwise, litigants must pay their own attorney's fees."[32] Pursuant to § 706(k) of Title VII of the Civil Rights Act of 1964, however, a Court may, in its discretion, award attorneys' fees to either a plaintiff or a defendant who prevails in a Title VII suit.[33] In *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, the U.S. Supreme Court held that a district court may award such fees "in its discretion . . . to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."[34] When considering whether a suit is frivolous, a district court should look to factors such as whether the plaintiff established a prima facie case, whether the defendant offered

---

[29] *Id.* at p. 8.

[30] *Id.*

[31] *Id.* (citing *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696 (E.D. La. 2009)).

[32] *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 (1978).

[33] *Id.* at 416; 42 U.S.C. § 2000e–5(k) ("In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs . . . .").

[34] *Id.* at 421.

to settle, and whether the court held a full trial.[35]

"Congress sought to protect defendants from burdensome litigation having no legal or factual basis" in civil rights cases by shifting a prevailing defendant's attorneys' fees to the plaintiff in certain circumstances.[36] However, although prevailing plaintiffs in Title VII actions can usually recover attorneys' fees from defendants, a prevailing defendant must satisfy a "more rigorous standard" to obtain an award of attorneys' fees than would a prevailing plaintiff because of differing policy considerations.[37] The Fifth Circuit has further cautioned: "a court must 'resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.'"[38] Instead, the court must ask whether "the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful."[39]

**B.    *Analysis***

Defendant argues that attorneys' fees ought to be awarded because (1) Plaintiff did not seriously pursue her action, and (2) this Court held that Plaintiff could not establish a prima facie case of harassment or discrimination under Title VII. As evidence, Defendant cites Plaintiff's "scant" Complaint, her untimely and equally brief filings, and her failure to respond to or propound

---

[35] *Myers v. City of W. Monroe*, 211 F.3d 289, 292 (5th Cir. 2000) (citing *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991)).

[36] *Fox v. Vice*, 563 U.S. 826 (2011).

[37] *Dean v. Riser*, 240 F.3d 505, 509 (5th Cir. 2001) (citing *Christiansburg*, 434 U.S. at 421).

[38] *Offord v. Parker*, 456 F. App'x 472, 2012 WL 13929, at *1 (5th Cir. 2012) (quoting *Christiansburg*, 434 U.S. at 421).

[39] *Id.* (quoting *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 997 (5th Cir. 2008)).

discovery.[40] Defendant also points to this Court's Order dismissing the case, as well as the EEOC's dismissal of her charge, as evidence that Curry's claims were groundless and lacked foundation.[41]

A district court may award attorneys' fees to a prevailing defendant in a Title VII suit only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."[42] Defendant cites no authority stating that a failure to vigorously prosecute one's claims is evidence that the action was "frivolous, unreasonable, or without foundation," and the Fifth Circuit has held that the mere failure to prosecute, without more, does not establish as a matter of law that a claim is either frivolous or vexatious.[43] However, the Fifth Circuit has held that a plaintiff's "unreasonable delay and inaction is certainly a factor to be considered" in evaluating whether a plaintiff's action was frivolous.[44]

Here, the Court agrees with Defendant's characterization that Plaintiff "did not seriously pursue her action."[45] As Defendant has noted, Plaintiff's opposition to Defendant's motion to dismiss was not timely filed (although late by only one day) and was hardly two pages long, citing no law in support of her arguments.[46] Plaintiff filed no opposition to the instant motion, and therefore does not dispute Defendant's claim that, as supported in its undecided motion to compel discovery

---

[40] Rec. Doc. 17-1 at p. 3.

[41] *Id.* at p. 4.

[42] *Christiansburg*, 434 U.S. at 421

[43] *Anthony v. Marion Cty. Gen. Hosp.*, 617 F.2d 1164, 1170 (5th Cir. 1980).

[44] *Id.*

[45] Rec. Doc. 17-1 at p. 3.

[46] *See* Rec. Doc. 5.

responses,[47] Plaintiff failed to respond to any of Defendant's discovery. Nor does Plaintiff dispute

Defendant's claim that she never propounded any discovery in the nearly nine months between her

filing of the Complaint and the Court's decision to dismiss the case.

Furthermore, Defendant argues, attorneys' fees are warranted because Plaintiff failed to

establish a prima facie case under Title VII.[48] In its Order dismissing the case, the Court held that,

although Plaintiff had not requested leave to amend her complaint to address the deficiencies alleged

in the motion to dismiss, such amendment nevertheless "appear[ed] futile" given the facts alleged

in Plaintiff's complaint and opposition to the motion to dismiss.[49] Furthermore, the Court held that

Plaintiff presented no facts whatsoever—nor even a mere allegation—to meet the fourth prong of

a prima facie claim of race discrimination, namely that she was replaced by someone outside her

protected group or treated less favorably than other similarly situated employees outside the

protected group.[50] The Court found that Plaintiff's claim for sexual harassment also failed because

she did not allege sufficient facts to establish that the conduct at issue was so severe or pervasive

as to alter her conditions of employment and create an abusive working environment.[51] The Court

noted that Plaintiff's only allegations were that "[o]n several occasions a co-employee made

unwanted remarks towards petitioner which were sexually suggestive" and that a co-worker had

---

[47] Rec. Doc. 14. As Defendant has noted, its motion was mooted by the Court's decision to dismiss the case.

[48] Rec. Doc. 17-1 at p. 4.

[49] Rec. Doc. 15 at p. 14.

[50] *Id.* at pp. 9–10.

[51] *Id.* at pp. 12–13.

once touched her hair.[52] This Court held, however, that such allegations were insufficient to state a claim for sexual harassment upon which relief may be granted, and that Plaintiff had cited no legal authority suggesting that such evidence was sufficient to sustain a claim.

The U.S. Supreme Court and Fifth Circuit have cautioned district courts to "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."[53] Instead, the court must ask whether "the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful."[54] The Fifth Circuit has upheld awards of attorneys' fees, however, in cases where there was "no evidence" to support plaintiffs' allegations that black employees faced harsher penalties than did white employees for fighting or clocking out early[55] and where a plaintiff sued a supervisor for a violation of Title VII although the supervisor was not an "employer" within the meaning of the statute.[56] Furthermore, district courts within the Fifth Circuit have granted attorneys' fees in similar contexts.[57] Here, the Court finds that

---

[52] *Id.* at p. 13.

[53] *Offord v. Parker*, 456 F. App'x 472, 2012 WL 13929, at *1 (5th Cir. 2012) (quoting *Christiansburg*, 434 U.S. at 421) (involving claims pursuant to 42 U.S.C. §§ 1983 and 1985).

[54] *Id.* (quoting *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 997 (5th Cir. 2008)).

[55] *Harris v. Plastics Mfg. Co.*, 617 F.2d 438, 440 (5th Cir. 1980).

[56] *Provensal v. Gaspard*, 524 F. App'x 974, 977 (5th Cir. 2013).

[57] *See, e.g.*, *Matherne v. Ruba Mgmt.*, No. 12-2461, 2014 WL 5429449, at *1 (E.D. La. Oct. 24, 2014) (Knowles, M.J.) (awarding attorneys' fees where the plaintiffs could not establish prima facie claims under Title VII); *Holden v. Alliance Compressors, L.L.C.*, No. 05-0984, 2006 WL 2356024, at *5 (W.D. La. Aug. 14, 2006) (granting attorneys' fees where the plaintiff presented no evidence to support her Title VII claims, particularly on the prong concerning whether other similarly situated employees had been treated more favorably); *Evans v. N. Street Boxing Club*, 83 F. Supp. 2d 744, 748 (W.D. La. 1999) (granting attorneys' fees where the law was clear that defendants were not "employers" within the meaning of Title VII).

Plaintiff's bare-bones allegations, coupled with the complete lack of legal authority supporting her claim, demonstrate that her "action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."[58] Plaintiff's failure to seriously pursue her claims further bolsters the Court's determination that Plaintiff's claim was without foundation.

As a final matter, the Court notes that it has concerns regarding Plaintiff's representation in this matter. Plaintiff's failure to seriously pursue discovery and to cite any relevant case law in her opposition to the motion to dismiss is likely to be attributable to her attorney, rather than to her. However, because "[t]here is no statutory authority for an assessment of fees against counsel in a Title VII case,"[59] the Court cannot financially attribute to Plaintiff's counsel the costs incurred by Defendant in litigating what Plaintiff's counsel should have known, through reasonable investigation, to be a meritless claim. Furthermore, other courts have cautioned that, because clients are ultimately responsible for their counsel's actions, "the perception that counsel was primarily at fault in filing or maintaining a frivolous, groundless, or unreasonable claim should play no role in the decision whether to assess attorney's fees against the plaintiff in a Title VII case."[60] Therefore, despite its reservations concerning the adequacy of representation in this matter, the Court finds that attorneys' fees are warranted.

In sum, "Congress sought to protect defendants from burdensome litigation having no legal

---

[58] *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421 (1978).

[59] *McCrory v. Rapides Reg'l Med. Ctr.*, 635 F. Supp. 975, 983 (W.D. La.) *aff'd sub nom. McCrory v. Rapides Reg'l Med.*, 801 F.2d 396 (5th Cir. 1986) (citing *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 915 (11th Cir.1982); *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980); *Reed v. Sisters of Charity*, 447 F. Supp. 309, 319–20 (W.D. La.1978)).

[60] *Durrett*, 678 F.2d at 916. Indeed, in cases "in which the plaintiff's counsel may appear to be primarily culpable, the plaintiff may find relief from the effect of our rule in the form of a malpractice action." *Id.*

or factual basis" in civil rights cases by shifting a prevailing defendant's attorneys' fees to the plaintiff in certain circumstances.[61] Although attorneys' fees to prevailing defendants under Title VII ought not be lightly granted, the Court finds that Plaintiff's suit lacked a legal basis such that an award of attorneys' fees in favor of Defendant is warranted in this matter. Therefore, the Court must next consider whether Defendant's requested fees are "reasonable."

## C.    *Legal Standard for Calculating a Reasonable Hourly Rate*

"Determining a reasonable attorney's fee is a matter that is committed to the sound discretion of a trial judge, . . . but the judge's discretion is not unlimited."[62] The burden is on the moving party to demonstrate the amount of attorneys' fees, including any adjustment or enhancement.[63] "A fee applicant seeking an enhancement must produce specific evidence that supports the award."[64] A court abuses its discretion when it awards attorneys' fees without "a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement."[65]

Courts in the Fifth Circuit engage in a two-step process to assess attorneys' fees. First, a lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work.[66] "[T]here is a strong presumption that the lodestar figure is reasonable."[67] However, after calculating the lodestar, a district court may decrease or

---

[61] *Fox v. Vice*, 563 U.S. 826 (2011).

[62] *Perdue v. Kenny A. ex. rel. Winn,* 559 U.S. 542, 558 (2010).

[63] *Jackson v. Host Int'l, Inc.*, 426 F. App'x 215, 225 (5th Cir. 2011).

[64] *Perdue,* 559 U.S. at 543.

[65] *Id.* at 558.

[66] *Id.*

[67] *Id.* at 553–54.

12

enhance the amount of attorneys' fees "based on the relative weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*"[68]  The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar award already took that factor into account. Such reconsideration is impermissible double-counting.[69]

## D.   *Analysis*

The first step in calculating the lodestar amount is determining the reasonable hourly rate. In the Fifth Circuit, a reasonable hourly rate is derived by "consider[ing] the attorneys' regular rates as well as prevailing market rates."[70] When an attorney's billing rate is not contested, it is prima facie reasonable.[71] The district court's "determination of a 'reasonable hourly rate' is a finding of fact . . . reviewable under the clearly-erroneous rubric."[72]

Here, Defendant seeks to recover fees for services provided by attorneys at the Myers Law Group, LLP in New Orleans, Louisiana. Defendant contends that its defense against this lawsuit was handled by Angella Myers, the founding partner of the Myers Law Group, who has more than 15

---

[68]  Traditionally, courts have considered the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) when calculating attorneys' fees. In *Perdue v. Kenny A. ex. rel. Winn,* 559 U.S. 542, 550–51 (2010), the Supreme Court noted that the *Johnson* factors were "[o]ne possible method" for determining reasonable attorneys' fees, but that the factors "gave very little actual guidance to district courts. Setting attorneys' fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." Since *Perdue*, however, the Fifth Circuit and the Eastern District of Louisiana have continued to weigh the *Johnson* factors when considering whether to decrease or enhance the lodestar in attorneys' fee cases. *See, e.g., Ransom v. M. Patel Enterprises, Inc.*, 734 F.3d 377, 388 (5th Cir. 2013); *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013); *Altier v. Worley Catastrophe Response, LLC*, No. 11-241, 2012 WL 161824, at *22 (E.D. La. Jan. 18, 2012). Accordingly, this Court does the same. *See Ahmed v. Brothers Food Mart, et al.*, No. 13-5948, Rec. Doc. 33 (E.D. La. Sept. 12, 2014).

[69]  *Saizan v. Delta Concrete Products Co.,* 448 F.3d 795, 800 (5th Cir. 2006) (citation omitted).

[70]  *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995).

[71]  *Id.*

[72]  *Islamic Ctr. of Miss. v. City of Starkville, Miss.*, 876 F.2d 465, 468 (5th Cir. 1989).

years of experience, and Mark Charver, a senior attorney with more than 21 years of experience.[73]
Defendant contends that Myers charged an hourly rate of $210 per hour and that Carver charged his
regular hourly rate of $190 per hour.[74] Attached to the pending motion is an affidavit from Myers,
wherein she attests that the request for attorneys' fees concerns only the expenses incurred relating
to the defense before this Court, rather than before the EEOC, and attests to the correctness of the
fee bills generated in this matter.[75] No affidavits from other practitioners within the New Orleans
area have been submitted.

A review of case law demonstrates that the hourly rates charged by defense counsel in this
matter are consistent with rates approved by other courts in this district.[76] Considering that the rates
charged are within those upheld by other courts in this district, and that Plaintiff has not challenged
the reasonableness of the rates charged by defense counsel, the Court finds that the rates of $210 per
hour for partners and $190 per hour for senior attorneys are reasonable in the New Orleans legal
market.

## B.    *Calculating the Reasonable Hours Expended*

The Court must next determine the number of hours  reasonably expended by defense

---

[73]  Rec. Doc. 17-1 at pp. 7–8.

[74]  *Id.* at p. 8.

[75]  Rec. Doc. 17-2 at p. 28.

[76]  *See, e.g., Hornbeck Offshore Services, L.L.C. v. Salazar*, No. 10-1663, 2011 WL 2214765 at *8–9 (E.D. La. June 1, 2011) (Wilkinson, M.J.), *adopted in part and revised in part*, 2011 WL 2516907 (E.D. La. June 23, 2011) (Feldman, J.), *rev'd on other grounds*, 713 F.3d 787 (5th Cir. 2013) (finding hourly rates of $295 to $420 for partners and $180 to $195 for associates from the same local firm, while at the high end of rates in the New Orleans legal market, were reasonable given the facts of the case); *Gulf Coast Facilities Management, LLC v. BG LNG Servs., LLC*, No. 09–3822, 2010 WL 2773208 at *5 (E.D. La. July 13, 2010) (Roby, M.J.) (holding that $300 per hour is a reasonable rate for an attorney with seventeen years of experience); *Johnson v. Big Lots Stores, Inc.,* 639 F. Supp. 2d 696, 701–02 (E.D. La. 2009) (Vance, C.J.) (finding hourly billing rates of $300 for partners, $225 for associates, and $75 for paralegals to be reasonable in a case brought under the Fair Labor Standards Act).

counsel in connection with their work on the case. The party seeking attorneys' fees bears the burden of establishing the reasonableness of the fees by submitting adequate documentation and time records of the hours reasonably expended and proving the exercise of "billing judgment."[77] Attorneys exercise "billing judgment" by excluding time that is unproductive, excessive, duplicative, or inadequately documented when seeking fee awards.[78]

A line-by-line review of the time billed reveals that defense counsel expended a total of 35.6 hours in connection with their defense before the district court. Specifically, it states that Myers expended 2.1 hours overseeing the case and editing written work product, and that Carver expended 33.5 hours as follows: (1) researching and drafting the motion to dismiss, memorandum in support, and reply brief; (2) preparing requests for discovery; (3) communicating with Plaintiff's counsel; and (4) otherwise monitoring and managing the case.[79]

In support of its calculation of reasonable hours expended by defense counsel, Defendant submits detailed time records for both attorneys. The records reflect the date, time involved and nature of services performed.[80] These billing invoices are limited to defense counsel's work on the case while it was pending before the district court. Having reviewed the detailed billing statements provided by Defendant, and considering that Plaintiff has not opposed Defendant's calculations, the Court finds that 35.6 hours is a reasonable calculation of time expended in connection with defending against Plaintiff's Complaint. Based on the foregoing, the Court finds that Defendant has

---

[77] *Wegner v. Standard Ins. Co.,* 129 F.3d 814, 822 (5th Cir. 1997).

[78] *Id.* (citing *Walker v. United States Dep't of Housing & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996)).

[79] Rec. Doc. 17-2 at pp. 3–5.

[80] *Id.*

exercised "billing judgment" with respect to the fees sought herein and that the hours expended on this matter were reasonable.

## C.   Adjusting the Lodestar

As indicated above, after the lodestar is determined, the Court may then adjust the lodestar upward or downward depending on the twelve factors set forth in *Johnson*.[81] To the extent that any *Johnson* factors are subsumed in the lodestar, they should not be reconsidered when determining whether an adjustment to the lodestar is required.[82] In this case, neither party has requested a lodestar adjustment pursuant to the *Johnson* factors. Defendant contends that, in light of the *Johnson* factors, it is clear that the total amount of attorneys' fees requested is reasonable, as Defendant has requested only the actual amount billed over the course of litigation.[83] Defendant also states that the most critical factor under *Johnson* is the degree of success obtained, and Defendant's counsel provided a successful defense in this matter.[84] Again, Plaintiff has not filed an opposition to the pending motion. The Court has considered the *Johnson* factors and concluded that they do not warrant an upward or downward departure here.

---

[81] *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717–19 (5th Cir. 1974)). The Johnson factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

[82] *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

[83] Rec. Doc. 17-1 at p. 6.

[84] *Id.* at p. 7.

16

## IV. Conclusion

For the reasons set forth above, this Court finds that Defendant is entitled to attorneys' fees as a prevailing party in a suit filed pursuant to Title VII. Furthermore, the Court finds that defense counsel performed 2.1 hours of work at a rate of $210 per hour and 33.5 hours of work at a rate of $190 per hour, for a total of $6,806. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's "Motion for Attorneys' Fees"[85] is **GRANTED**.

**NEW ORLEANS, LOUISIANA**, this __20th__ day of January, 2016.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[85] Rec. Doc. 17.